UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PATRICIA DIANN TAYLOR,

     Plaintiff,

v.                                                    Case No.:  3:21-cv-1290-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff Patricia Diann Taylor seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.     **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

A.     **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

B.     **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance and for supplemental security income on September 8, 2016, alleging disability beginning on July 8, 2013. (Tr. 87, 88, 316-328). The applications were denied initially and on reconsideration. (Tr. 87, 88, 117, 118). Plaintiff requested a hearing, and on February 11, 2019, a hearing was held before Administrative Law Judge Gregory Froehlich ("ALJ"). (Tr. 50-65). On February 27, 2019, the ALJ entered a decision finding Plaintiff not under a disability from July 8, 2013, through the date of the decision. (Tr. 122-31).

Plaintiff requested review of the decision, and the Appeals Council granted review and remanded the case to the ALJ to give further consideration of Plaintiff's maximum residual functional capacity and obtain supplemental evidence from a vocational expert. (Tr. 136-138). On remand, the ALJ held a second hearing on June 11, 2020. (Tr 34-49). On April 14, 2021, the ALJ entered a decision finding Plaintiff not disabled from July 8, 2013, through the date of the decision. (Tr. 15-27). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on October 26, 2021. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on December 30, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 14).

### D.     Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016. (Tr. 18). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 8, 2013, the alleged onset date. (Tr. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, migraine headaches, bipolar disorder, anxiety, and hepatitis B." (Tr. 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 18).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) with the following limitations: a 30-minute sit/stand option. No climbing ladders/ropes/scaffolds or balance but occasional other postural activities (climbing ramps/stairs, stooping, kneeling, crouching, and crawling). No concentrated exposure to vibrations and no work around moving mechanical parts or at unprotected heights. Limited to performing work which needs little or no judgment to do simple duties that can be learned on the job in a short time (up to and including 30 days), able to deal with the changes in a routine work setting, and able to relate adequately to Supervisors with only occasional Coworker and General Public contact.

(Tr. 20).

At step four, the ALJ determined that Plaintiff had no past relevant work. (Tr. 25). At step five, the ALJ relied on the vocational expert's testimony when considering Plaintiff's age (43 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, and found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 25-26). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1)   assembler, small products, DOT 706.684-022,[1] light, unskilled, SVP 2

(2)   labeler, DOT 920.687-126, light, unskilled, SVP 2

(3)   inspector and packer, DOT 559.687-074, light, unskilled, SVP 2

(Tr. 26). The ALJ concluded that Plaintiff had not been under a disability from July 8, 2013, through the date of the decision. (Tr. 26).

## II.   Analysis

On appeal, Plaintiff challenges whether the ALJ properly weighed the opinions of two consultative examiners and whether substantial evidence support the RFC determination. (Doc. 16, p. 9). Plaintiff argues that the RFC resulted from the ALJ's failure to properly weight the opinion evidence provided by two consultative examiners, which lead to the exclusion of a limitation for the use of a cane in the

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

RFC and amounts to error. (Doc. 16, p. 10). The consultative examiners' opinions at issue are: William Guy, M.D. and Donald S. Freedman, M.D. (Tr. 1253-1260, 1296-1308). The Commissioner contends that none of the medical reports from 2017 or 2018 mention that Plaintiff required a cane or walker to ambulate nor do they contain objective medical evidence of falls or more restrictions due to her lumbar impairment and radiculopathy or other impairments. (Doc. 24, p. 31). The Commissioner also contends that even if Plaintiff needed a cane by the time of Dr. Freedman's 2021 evaluation, the record does not indicate her need of an assistive device or the circumstances under which she needed an assistive device for any twelve-month period. (Doc. 24, p. 31). Thus, the Commissioner argues the ALJ did not need to include the use of a cane in the RFC. (Doc. 24, p. 32).

For disability cases filed before March 27, 2017[2] – such as this one – at step four, an ALJ must properly consider treating, examining, and non-examining physician's opinions and weigh these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an opinion concerning the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions;

---

[2] For disability cases filed after March 27, 2017, new regulations apply and the ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. *See* 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a).

or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662 F.2d at 735).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Even though examining doctors' opinions are not entitled to deference, an ALJ is still required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation

supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

### A.   Dr. Guy

On June 14, 2017, Dr. Guy conducted an internal medicine examination. (Tr. 1253-1260). In the decision, the ALJ reviewed Dr. Guy's examination report and afforded it limited weight. (Tr. 22, 24). The ALJ found:

> Following the June 2017 consultative examination, Dr. Guy opined, "The claimant has marked restrictions with regard to sitting, standing, walking, climbing stairs, bending, kneeling, and squatting. She has marked restrictions with regard to lifting and carrying." Exhibit 7F/5. While the claimant's diagnostic studies would correlate to her chronic low back pain with radiculopathy, the claimant's exam was largely benign. For example, gait was normal. She was able to get on and off the exam table without assistance, and she was able to stand from a seated position (in a chair) without assistance. Straight leg raise was negative and her joints were stable. Her strength was 5/5 throughout. There were no sensory deficits or muscle atrophy noted. Hand and finger dexterity was intact and her grip strength was 5/5 bilaterally. Exhibit 7F/3-4. There is a concern that Dr. Guy relied too heavily on the claimant's subjective report of her symptoms and limitations, uncritically accepting as true most, if not all, of what the claimant reported. In the consultative examination, the claimant had some tenderness in the lower back with range of motion testing. However, the overall exam demonstrates her capacity for a reduced range of light work. What is more, Dr. Guy's medical opinion is not consistent with the record as a whole. More specifically, progress notes from Family Care Partners in 2017 stated that the claimant's medications are helpful and she is active. Exhibit 8F/3. The claimant's chronic pain was noted as stable. Exhibit 8F/5. In May 2017, the claimant rated the

severity of her back pain as mild. Exhibit 8F/8. The claimant had full range of motion of the lumbar spine with only moderate pain in May 2017. Exhibit 8F/11. For the aforementioned reasons, Dr. Guy's medical opinion is given limited weight.

(Tr. 24).

Plaintiff argues that when considering Dr. Guy's opinion, the ALJ cherry-picked the unremarkable findings while ignoring the imaging results and significant deficits, such as range of motion "that motivated Dr. Guy's opinion." (Doc. 16, p. 15-16). To the contrary, the ALJ noted that the diagnostic studies would correlate to her chronic low back pain with radiculopathy, and Plaintiff has some tenderness in the lower back with range of motion testing. (Tr. 22, 24). While acknowledging these diagnostic studies and exam results, the ALJ also noted the examination results were largely benign and provided examples: normal gait, ability to get on and off the exam table with assistance, ability to stand from seated position with assistance, negative straight leg raise tests, stability of joints, 5/5 strength throughout, no sensory deficits, no muscle atrophy, 5/5 grip strength, and intact finger dexterity. (Tr. 24). The ALJ also considered a March 2017 medical record, which showed that Plaintiff's medications were helpful and she was active, and a May 2017 medical record showing Plaintiff rated the severity of her pain as mild and had only moderate pain with full range of motion of the lumbar spine. (Tr. 24, 1263, 1268, 1271). In short, the ALJ was under no duty to give deference to Dr. Guy's opinion, but still

thoroughly considered his examination report, and provided many reasons in support of his opinion. Substantial evidence supports the ALJ affording limited weight to Dr. Guy's opinion. Despite this finding, the Court is remanding this matter on other grounds and will require the Commissioner to reevaluate Dr. Guy's opinion as well.

### B.    Dr. Freedman

Based on a significant gap in treatment records, the ALJ referred Plaintiff to a consultative examination after the hearing. On January 4, 2021, Dr. Freedman conducted an independent medical examination. (Tr. 1296-1308). The ALJ summarized Plaintiff's reports to Dr. Freedman of the history of her low back pain and right sciatic nerve pain. (Tr. 22). Dr. Freedman noted that Plaintiff presented with a cane and that her walker had been stolen two days before the exam. (Tr. 22). As to the examination, the ALJ summarized the findings:

> On examination, the claimant walked into the exam room with a cane. She was able to sit and stand for portions of the exam without difficulty. She was able to rise from a seated chair with use of a cane. She was able to get on and off the exam table with some difficulty. She had normal range of motion in the upper and lower extremities, except the right hip. She had 5/5 strength throughout. She had tenderness to palpation of the cervical and lumbar spine. She had normal range of motion in the spine except for cervical lateral flexion and lumbar spine forward flexion. Seated and supine straight leg raise was negative on the left and positive on the right. Sensory perception was normal. She had an antalgic gait. Exhibit 9F/3-4.

(Tr. 22).

The ALJ later thoroughly summarized Dr. Freedman's opinion and afforded it little weight:

> Following the January 2021 consultative examination, Dr. Freedman opined that the claimant is able to lift up to 50 pounds frequently. She is able to sit for 6 hours, stand for 5 hours, and walk for 6 hours in an 8-hour workday. She cannot operate foot controls. She requires the use of a cane to ambulate. She is able to frequently climb stairs/ramps; never climb ladders/scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. She cannot operate a motor vehicle; however, she is able to tolerate exposure to all other environmental limitations continuously. Overall, this opinion is given little weight, as it is inconsistent with the medical evidence of record. For example, the record does not establish that a hand-held assistive device is medically required pursuant to SSR 96-9p. To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). In his report, Dr. Freedman stated, "Claimant's use of cane is secondary to lumbar spine pain with right side radiculopathy." Exhibit 9F/7. The undersigned acknowledges that the claimant has a history of chronic back pain; however, due to the significant gap in the medical record, it is unknown whether she was experiencing an exacerbation in back pain during the January 2021 consultative examination. In a prior consultative examination, she did not use an assistive device for ambulation. Exhibit 7F/3. What is more, at the recent hearing, the claimant testified that she has not required emergent care in years. In terms of never operating foot controls, it appears as though Dr. Freedman based his opinion of the claimant's subjective statements. When asked to identify the particular medical or clinical findings that support his assessment concerning the operation of foot controls, Dr. Freedman wrote, "Claimant does not drive secondary to lumbar spine pain with radiculopathy." He did not provide clinical findings. Exhibit 9F/8. In his report, Dr. Freedman opined that the claimant is only able to sit for 15 minutes at a time, stand for 10 minutes at a time, and walk for 15 minutes

at a time. The doctor noted, "Claimant requires frequent change of position secondary to lumbar spine pain." Exhibit 9F/7. The undersigned has accounted for the claimant's need to change positions in the residual functional capacity assessment with the sit/stand option. However, the overall evidence of record does not warrant further limitations. As noted above, the claimant's back pain has been described as mild and stable at times, even when she has not taken medication. Exhibit 8F/18; see also Exhibits 8F/8 and 8F/27.

(Tr. 24-25).

Plaintiff argues that the reasons the ALJ found for affording little weight to Dr. Freedman's opinion that Plaintiff required the use of a hand-held device are unsupported by Dr. Freedman's examination findings (Doc. 16, p. 11). Plaintiff claims that the record established the need for an assistive device. (Doc. 16, p. 11). Plaintiff cites Dr. Freedman's examination record showing that Plaintiff presented with a cane, used it with ambulation, and could not perform a tandem gait without it. (Doc. 16, p. 11-12; Tr. 1301).

For a hand-held assistive device to be found medically necessary, medical documentation must "establish[] the need for a hand-held assistive device to aid in walking or standing, and describ[e] the circumstances for which it is needed (i.e., all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, *7 (1996). When the record establishes a plaintiff needs a hand-held assistive device, the ALJ "must always consider the particular facts of a case" and determine the circumstances under which it is required. *Id*.

Dr. Freedman established the need for an assistive device to assist Plaintiff in ambulation. He found Plaintiff had an antalgic gait, used a cane to rise from a seated chair, and could not perform tandem gait without use of a cane. (Tr. 1297, 1298). He also found Plaintiff required the use of a cane to ambulate at all times and found a cane medically necessary. (Tr. 1301). He supported this findings by stating, "claimant's use of cane is secondary to lumbar spine pain with right side radiculopathy." (Tr. 1301). Dr. Freedman also found that Plaintiff could not ambulate without using a wheelchair, walker, two canes, or two crutches and could not walk a block at a reasonable pace on rough or uneven surfaces. (Tr. 1305). Dr. Freedman again supported these findings by stating that Plaintiff's activities are limited secondary to lumbar spine pain with radiculopathy. (Tr. 1305).

The ALJ acknowledged that Plaintiff had a history of chronic back pain, but afforded little weight to Dr. Freedman's opinion that Plaintiff required the use of an assistive device. (Tr. 25). To discount this opinion, the ALJ noted that records from three years before Dr. Freedman's examination did not mention the use of an assistive device. (Tr. 25). The ALJ also posited that "it is unknown whether [Plaintiff] was experiencing an exacerbation in back pain during the January 2021 consultative examination." (Tr. 25). But nothing in Dr. Freedman's report suggested that the use of a cane to ambulate was temporary. While true that during Dr. Guy's examination in 2017 Plaintiff did not use an assistive device, the ALJ recognized

that there was a significant gap in the course of treatment and a consultative examination was warranted. (Tr. 24). It does not logically follow to order a more recent 2021 consultative examination, but then give little weight to it because it conflicts with a prior 2017 consultative examination. While the ALJ discounted other portions of Dr. Freedman's opinion, substantial evidence does not support affording little weight to Dr. Freedman's opinion that an assistive device was medically necessary. In addition, whether an assistive device is required to ambulate substantially affects the RFC determination. For these reasons, substantial evidence does not support the ALJ's decision to afford little weight to Dr. Freedman's opinion on the use of an assistive device and this matter is remanded to reconsider whether Plaintiff requires the use of an assistive device for ambulation.[3]

## III.    Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the consultative examiners' opinions along with all of the medical evidence of record. The Clerk of

---

[3] Plaintiff applied for both a period of disability and disability insurance benefits and supplemental security income. (Tr. 122). The Court recognizes that for purposes of disability and disability insurance benefits, Plaintiff's date last insured was June 30, 2016, and she must show that she was disabled on or before this date. *Ross v. Comm'r, Soc. Sec. Admin.*, No. 21-13562, 2022 WL 3654820, at *2 (11th Cir. Aug. 25, 2022); (Tr. 18). The records for the need for an assistive device may have occurred after the date last insured, but because this matter is remanded, the Court will defer to the Commissioner for any such determination.

Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 17, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties